UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW YORK CITY HEALTH AND HOSPITALS CORPORATION,<br><br>              Plaintiff in Interpleader,<br>v.<br><br>RONALD HUNT, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE FOR THE ESTATE OF DR. DANIEL HIPPOLYTE HUNT, STEPHANIE HUNT-GUILLAUME, DESMOND HUNT, COURTNEY HUNT and ADRIAN WILLIAMS,<br><br>              Defendants in Interpleader. | Civil Action No.<br><br>**COMPLAINT IN INTERPLEADER** |

For its Complaint in Interpleader against Defendants in Interpleader Ronald Hunt ("Ronald"), both individually and as personal representative for the estate of Dr. Daniel Hippolyte Hunt (the "Decedent"), Stephanie Hunt-Guillaume ("Stephanie"), Desmond Hunt ("Desmond"), Courtney Hunt ("Courtney") and Adrian Daniel Williams ("Adrian") (collectively, the "Claimants"), Plaintiff in Interpleader New York City Health and Hospitals Corporation (the "Stakeholder") alleges as follows:

## THE PARTIES

1. The Stakeholder is a New York public benefit corporation and an instrumentality of New York City, with a principal place of business at 50 Water Street, 17th Floor, New York, New York 10041.

2. Ronald is an individual currently residing at 1200 Golf Course Drive, Bowie, Maryland 20721. Ronald is a natural born child of the Decedent.

1

3. Stephanie is an individual currently residing at 57 Hobart Avenue, Summit, New Jersey 07901. Stephanie is a natural born child of the Decedent.

4. Desmond is an individual currently residing at 2211 The Oaks Boulevard, Kissimmee, Florida 34746. Desmond is a natural born child of the Decedent.

5. Courtney is an individual currently residing at 3225 Brewster Drive, Kissimmee, Florida 34743. Courtney is a natural born child of Valerie Renee Hunt ("Valerie"), a natural born child of the Decedent, who predeceased the Decedent on May 18, 1997.

6. Adrian is an individual currently residing at 573 Forest Street, Methuen, Massachusetts 01844. Adrian has claimed to be a natural born child of the Decedent.

## JURISDICTION AND VENUE

7. Pursuant to 28 U.S.C. § 1335(a), this Court has original jurisdiction of any civil action of interpleader where two or more adverse claimants of diverse citizenship claim, or may claim, to be entitled to money or property of the value of $500 or more in the custody or possession of a third-party stakeholder.

8. As set forth above, for purposes of diversity, Ronald is a citizen of Maryland, Stephanie is a citizen of New Jersey, Desmond and Courtney are citizens of Florida and Adrian is a citizen of Massachusetts. Accordingly, there is diversity of citizenship of at least two claimants in this action.

9. As set forth below, the value of the money or property at issue in this action exceeds the sum or value of $500. Accordingly, this court has original jurisdiction in this matter pursuant to 28 U.S.C. § 1335(a).

10. In the alternative, in accordance with Federal Rule of Civil Procedure 22 and pursuant to 28 U.S.C. § 1332(a)(1), this Court has original jurisdiction of any civil action

between citizens of different states where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11. As set forth above, the Stakeholder is a citizen of New York for purposes of diversity jurisdiction while Ronald is a citizen of Maryland, Stephanie is a citizen of New Jersey, Desmond and Courtney are citizens of Florida and Adrian is a citizen of Massachusetts. Accordingly, this action is between citizens of different states.

12. As set forth below, the matter in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs. Accordingly, this court has original jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a)(1).

13. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this judicial district, and a substantial part of the property subject to this action is situated in this judicial district.

## FACTUAL BACKGROUND

**A.  The Plan**

14. The Stakeholder initially established a 403(b) retirement plan under The Prudential Insurance Company of America 403(b) Non-ERISA Volume Submitter Plan (the "Plan") on October 1, 1977. The Stakeholder is the plan administrator for the Plan which, as restated, remains in effect to the present day. Given that the Plan is established for employees of a state or political subdivision agency or instrumentality thereof, the Plan is not subject to the Employee Retirement Income Security Act. See 29 U.S.C. §§ 1002(32); 1003(b)(1).

15. Pursuant to the Plan, an eligible employee could contribute a percentage of his or her compensation to a retirement account for the employee's benefit. Section 7.05(A) of the Plan provides that a Plan participant may designate one or more beneficiaries to whom all or any

portion of the participant's Vested Account Balance (as that term is defined in the Plan) would be paid in the event of the participant's death.

16. Section 7.05(B) of the Plan provides that if a participant failed to name one or more beneficiaries in accordance with Section 7.05(A) of the Plan, then in the event of the participant's death the participant's Vested Account Balance would be paid in full to the participant's surviving spouse, and if the participant did not have a surviving spouse, then the Vested Account Balance would be paid to the participant's "descendants (including adopted children), in equal shares by right of representation (one share for each surviving child and one share for each child who predeceases the Participant with living descendants)."

17. Section 7.05(B) of the Plan further provides that if there was no surviving spouse and no descendants, then the proceeds of the participant's Vested Account Balance would be paid to the participant's surviving parents, and if there are no surviving parents, finally the proceeds of the participant's Vested Account Balance would be distributed to the participant's estate.

**B.  The Decedent's Participation in the Plan**

18. The Stakeholder hired Decedent on June 24, 1984. The Decedent was employed by the Stakeholder from that date until January 1, 2007.

19. During the course of the Decedent's employment with the Stakeholder, the Decedent was eligible to participate in the Plan and make contributions to a 403(b) retirement account for his benefit.

20. The Decedent did indeed participate in, and made contributions to, the Plan. The Decedent enrolled in the Plan on December 1, 1984, and as of February 8, 2023, the Decedent's Vested Account Balance under the Plan was $137,539.79.

## C. The Decedent's Death and Resulting Beneficiary Determination

21. The Decedent passed away on April 28, 2022.

22. At the time of the Decedent's death, he failed to designate one or more beneficiaries pursuant to Section 7.05(A).

23. On August 2, 2022, Ronald reported the Decedent's death to the Plan's record keeper. Per Ronald's request, beneficiary claim paperwork was emailed to Ronald on August 9, 2022. On August 15, 2022, Desmond contacted the Plan's record keeper requesting that beneficiary claim paperwork be sent to his address, which was sent to Desmond the same day.

24. On August 22, 2022, Ronald returned the beneficiary claim paperwork to the Plan's record keeper naming only him and Desmond as the Decedent's surviving children. On August 26, 2022, Desmond returned the beneficiary claim paperwork naming Stephanie and Adrian as additional surviving children of the Decedent. Upon information and belief, Ronald intentionally chose not to include Stephanie as a surviving child of the Decedent in an effort to exclude her from receiving a portion of the proceeds of the Decedent's Vested Account Balance.

25. On August 30, 2022, the Plan's record keeper sent letters to each of Ronald, Stephanie, Desmond and Adrian requesting copies of their birth certificates. On September 1, 2022, the Plan's record keeper received copies of Stephanie's, Desmond's and Adrian's birth certificates from Desmond. Adrian's birth certificate did not list a father.

26. Ronald also submitted proof to the Stakeholder that he was a child of the Decedent. Each of Ronald, Stephanie and Desmond also further certified that the Decedent was unmarried at the time of his death and had no other children, natural or adopted, living or deceased.

27. Accordingly, pursuant to Section 7.05(B) of the Plan, with the Decedent failing to designate one or more beneficiaries of his Vested Account Balance in the event of his death and having no surviving spouse, the proceeds of the Vested Account Balance were to be split equally between Ronald, Stephanie and Desmond.

28. On October 27, 2022, the Stakeholder sent via certified mail a beneficiary acknowledgment form to each of Ronald, Stephanie and Desmond. The beneficiary acknowledgment form requested that each of Ronald, Stephanie and Desmond agree to the relevant facts: that the Decedent died on April 28, 2022, having failed to designate a beneficiary under the Plan and having no surviving spouse, and that the Decedent's only children, living or dead, were Ronald, Stephanie and Desmond. A true and correct copy of the beneficiary acknowledgment form the Stakeholder sent to Ronald is attached hereto as **Exhibit A**.

29. That same day, the Stakeholder also sent via certified mail a letter to Adrian denying his claim for death benefits as a child of the Decedent for failing to submit proof that the Decedent was his father. A true and correct copy of the denial letter is attached hereto as **Exhibit B**.

30. On November 14, 2022, the Stakeholder received the signed beneficiary acknowledgment form from Desmond. In addition to his signature, Desmond wrote on the beneficiary acknowledgement form a statement that the Decedent had a fourth natural born child, Valerie, who predeceased the Decedent and had a surviving son, Courtney. Included with Desmond's signed beneficiary acknowledgment form was a package of materials demonstrating that Valerie was a natural born child of the Decedent and Courtney was a natural born child of Valerie. Additionally, Desmond provided a signed and notarized statement from Courtney designating Desmond as Courtney's representative. A true and accurate copy of Desmond's

6

signed beneficiary acknowledgment form and Courtney's designation is attached hereto as **Exhibit C**.

31. Accordingly, pursuant to Section 7.05(B) of the Plan, based on the fact that the Decedent failed to designate a beneficiary under the Plan in accordance with Section 7.05(A) and had no surviving spouse, the balance of the Decedent's Vested Account Balance was to be distributed in equal parts to each of Ronald, Stephanie and Desmond, as children of the Decedent, and Courtney, as a child of a deceased child of the Decedent

**D.**     **Ronald's November 25, 2022 Demand Letter**

32. On December 1, 2022, the Stakeholder received a letter from Ronald dated November 25, 2022. A true and correct copy of Ronald's November 25, 2022 letter is attached hereto as **Exhibit D**.

33. In Ronald's letter he identifies himself as the personal representative of the Decedent's estate. Ronald explained that he contacted the Plan servicer in order to have the funds in the Decedent's Vested Account Balance directed to the Decedent's estate. Ronald asserted that because the Decedent died without designating a beneficiary under the Plan and had no surviving spouse, the proceeds of the Decedent's Vested Account Balance should be remitted to the Decedent's estate in accordance with Maryland and New York law.

34. Notably, Ronald described the Stakeholder's refusal to remit the proceeds of the Decedent's Vested Account Balance to the Decedent's estate in violation of the Plan's terms, underlined and in bold, as an imposition on the Decedent's estate that will not be tolerated and disrespectful and dismissive conduct that ends now. Further, Ronald claimed that the Stakeholder's refusal to distribute the Decedent's Vested Account Balance to the Decedent's estate was causing undue and continuing harm to the Decedent's estate, Ronald and Ronald's family.

35. Ronald stated that his attorneys were "prepared to file a lawsuit against the Plan, its sponsor, servicer, representatives, agents and affiliates with respect to" the Decedent's Vested Account Balance under the Plan. He also demanded that the Stakeholder remit the Decedent's Vested Account Balance in full to a designated estate account of the Decedent by certified check or wire transfer. Ronald described his letter as the "sole attempt to reach an amicable, timely and final resolution of this matter."

36. Ronald finally claimed that if he did not receive the Stakeholder's acceptance and compliance with his demands, his "attorneys will forcefully pursue all remedies available at law or in equity to ensure your cooperation, including, without limitation, filing concurrent local, state and U.S. federal lawsuits against the Plan, its sponsor, servicer, representatives, agents and affiliates to seek judicial relief (including attorney's fees)."

**E.    The Stakeholder's Response**

37. On December 19, 2022, the Stakeholder responded to Ronald, reiterating the Stakeholder's denial of Ronald's demand for the Stakeholder to distribute the proceeds of the Decedent's Vested Account Balance to the Decedent's estate. A true and correct copy of the Stakeholder's December 19, 2022 response letter is attached hereto as **Exhibit E**.

38. The Stakeholder explained again that the Decedent failed to designate a beneficiary pursuant to Section 7.05(A) of the Plan and was unmarried at the time of his death. Accordingly, pursuant to Section 7.05(B), the Stakeholder would be distributing the Decedent's Vested Account Balance to the Decedent's three living children, Ronald, Stephanie and Desmond, and now also to Courtney as the Decedent's grandson.

39. The Stakeholder finally notified Ronald that if the matter could not be resolved prior to February 2, 2023, the Stakeholder would initiate an interpleader action.

F.     **Ronald's February 2, 2023 Letter**

40.    On February 2, 2023, Ronald sent a letter to the Stakeholder in response to the Stakeholder's denial of Ronald's demands. A true and correct copy of Ronald's letter is attached hereto as **Exhibit F**.

41.    As set forth more fully in Exhibit F, Ronald claimed that the Decedent intended to disinherit Stephanie, Desmond and Courtney to the exclusive benefit of Ronald. Those reasons included:

A.     Courtney took money from the Decedent meant for college and did not use the money for that purpose.

B.     Stephanie was very disrespectful to the Decedent and the Decedent questioned whether Stephanie was really his child.

C.     Desmond kicked the Decedent out of Desmond's home after getting married.

D.     Ronald and his family exclusively cared for the Decedent while the Decedent was dying of stage 4 cancer.

42.    Ronald further claimed that the Decedent wanted all of his money to go to Ronald, and everything that Ronald and his family had done for the Decedent would be repaid with the Vested Account Balance and other monies owed to the Decedent. Ronald claimed that the Decedent made videos explaining these desires.

43.    Ronald finally concluded with a threat to the Stakeholder should it proceed with initiating an interpleader action. Ronald explained that he would sue the Stakeholder and the Stakeholder's Chief Retirement Officer personally, seeking the maximum compensatory and

punitive damages available. Ronald also implied he would initiate some kind of class action proceeding against the Stakeholder and possibly other retirement plans.

**G.     Clear Evidence of Adverse Claims Against the Stakeholder**

44.     Based on the foregoing, the Stakeholder can conclusively demonstrate the desperate need for an interpleader action in this matter.

45.     Ronald, one of the would-be recipients of a portion of the Decedent's Vested Account Balance has already threatened suit against the Stakeholder multiple times if it does not distribute the full balance of the Vested Account Balance to the Decedent's estate. Upon information and belief, Ronald is the sole beneficiary of the Decedent's estate.

46.     However, if the Stakeholder were to acquiesce to Ronald's demands and remit the Decedent's Vested Account Balance to the Decedent's estate, the Stakeholder would be violating the express provisions of Section 7.05(B) of the Plan. Pursuant to Section 7.05(B) of the Plan, Ronald, Stephanie, Desmond and Courtney are entitled to an equal share of the Decedent's Vested Account Balance because the Decedent failed to designate a beneficiary and was unmarried at the time of his death. Complying with Ronald's demands would expose the Stakeholder to claims from each of Stephanie, Desmond and Courtney.

47. Further, although Adrian failed to submit proof to the Stakeholder establishing that the Decedent was his father, if Adrian is indeed a child of the Decedent, Adrian would be entitled to share equally in the Vested Account Balance with Ronald, Stephanie, Desmond and Courtney. Distributing the proceeds of the Vested Account Balance to everyone but Adrian exposes the Stakeholder to potential claims from Adrian.

## PRAYER FOR RELIEF

Wherefore, the Stakeholder prays for judgment against the Claimants and each of them as follows:

1. That the Court restrain and enjoin the Claimants from instituting any action against the Stakeholder with regard to the sum of $137,539.79 being held by the Stakeholder;

2. That the Court determine and enter an order setting forth the proper recipients of the sum of $137,539.79;

3. That the Court permit the Stakeholder to deposit the sum of $137,539.79 into the registry of the Court;

4. That the Stakeholder be dismissed from this action with prejudice following payment of the proceeds into the registry of the Court;

5. That the Stakeholder be awarded its costs in bringing this action to be determined by the Court and be paid out of the proceeds; and

6. For such other and further relief as the Court deems just and equitable under the circumstances.

Respectfully submitted,

**K&L GATES LLP**
Attorneys for Plaintiff in Interpleader
New York City Health and Hospitals Corporation
By: /s/ Vincent N. Avallone
Vincent N. Avallone
A Member of the Firm

599 Lexington Avenue
New York, NY 10022

|  |  |
|---|---|
|  | (212) 536-3900 |
|  | -and- |
|  | One Newark Center – 10th Floor |
|  | Newark, NJ 07102 |
|  | Telephone (973) 848-4000 |
|  | Fax (973) 848-4001 |
| Dated:  February 22, 2023 | vincent.avallone@klgates.com |